CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 07 2009

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ROXANNE M. BORTH, ) | |
|     Plaintiff, ) | Civil Action No. 7:08cv355 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | By: Hon. James C. Turk |
|     Defendant. ) | Senior United States District Judge |

This case was referred to the Honorable B. Waugh Crigler, United States Magistrate Judge, to submit a report setting forth appropriate findings, conclusions, and a recommended disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge filed his Report and Recommendation ("R & R") on March 26, 2009, recommending that this court enter an order affirming the Commissioner of Social Security's ("Commissioner") decision denying plaintiff Roxanne M. Borth's claim for supplemental security income ("SSI") benefits under the Social Security Act (the "Act"), and grant the Commissioner's motion for summary judgment.

Borth timely filed objections to the Report and Recommendation on April 6, 2009; therefore the court must undertake a de novo review of those findings of fact and recommendations for disposition to which Borth has objected. Wimmer v. Cook, 774 F.2d 68, 73 (4th Cir. 1985). After a thorough examination of Borth's objections, the applicable law, and the documented record, the court adopts the Magistrate Judge's R & R, grants the Commissioner's motion for summary judgment, and denies Borth's motion for summary judgment.

I.

Borth filed an application for disability insurance benefits ("DIB") and SSI payments on February 13, 2006, initially claiming an onset date of October 1, 1994. (Administrative Record,

1

hereinafter "R.," 8.) Because of the res judicata effect of a prior unsuccessful application for benefits, at the administrative hearing Borth amended her alleged onset date to September 23, 2003, the day after the ALJ's prior denial of benefits. (R. 8.) As Borth's insured status for DIB benefits expired on December 31, 1999, the ALJ then dismissed her DIB claim. (R. 3, 8.)

On August 31, 2007, the ALJ issued his decision, and found that Borth was not disabled.[1] In reaching this conclusion, the ALJ proceeded through the five-step sequential evaluation process used by the Commissioner. See 20 C.F.R. § 416.920. This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) has the residual functional capacity ("RFC")[2] to return to his or her past relevant work; and (5) has the RFC necessary to perform other work.[3] See id.

The ALJ made the following findings: First, that Borth has not engaged in substantial gainful activity since her alleged onset date. (R. 12, 18.) Second, that Borth suffers from degenerative disc disease/osteoarthritis, depression, adult attention deficit disorder, anxiety disorder, and gastroesophageal reflux disease, which are considered severe impairments pursuant to 20 C.F.R. § 416.920(b). (R. 15, 18.) Third, that these medically determinable impairments—either singularly or in combination—do not meet or medically equal any listing-level impairment. (R. 15, 19.) Here, the ALJ found that while Borth's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence, and the limiting effects of these symptoms was not entirely

---

[1] "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

[2] RFC is a measurement of the most a claimant can do despite her limitations, considering the claimant's age, education, work experience, and impairments. See 20 C.F.R. § 416.945(a).

[3] If the claimant is found to be "disabled" or "not disabled" at any point in the five-step process, the inquiry ends there. 20 C.F.R. § 416.920(a)(4).

2

credible. (R. 16, 19.) Fourth, that the "limitations imposed by [Borth's] impairments may not preclude performance of past relevant work as an assembler or machine operator," as she could still perform "light exertional work," if such work is easy to learn and produces only low levels of stress.[4] (R. 17, 19.) Specifically, the ALJ found that Borth is:

> able to frequently lift and carry 10 pounds (with occasional lifting/carrying of 20 pounds, can sit, stand, or walk each for a total of 6 hours in and 8-hour period, and can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but is unable to perform more than simple, low-stress, easy-to-learn work that does not require climbing ladders/ropes/scaffolds or involve even moderate exposure to unprotected heights or hazards.

(R. 19.) Fifth, that if Borth could not return to her past relevant work, then in the alternative Borth retains the residual functional capacity to perform "a significant number of jobs in the national economy" such as "work as a cleaner, mail clerk, and production grader."[5] (R. 19.) For these reasons, the ALJ found that Borth was not disabled at any point from her alleged onset date through the date of decision. (R. 19.) The Appeals Council denied Borth's request for review (R. 21-23), making the ALJ's decision the final decision of the Commissioner.

In his R & R, the Magistrate Judge concluded that substantial evidence supported the ALJ's determination that Borth's mental and physical impairments were not disabling. (R & R at 5-8). More specifically, the Magistrate Judge agreed with the ALJ's decision to afford the opinion of her treating psychiatrist, Dr. J. Richard Frazier's little weight, finding that Dr. Frazier's records were "largely illegible," "not supported by the objective medical evidence," and "internally inconsistent." (R & R at 7-8.) In addition, the Magistrate Judge rejected plaintiff's alternative argument that the illegibility of Dr. Frazier's records compelled "an

---

[4] Borth was born in 1967 (R. 153), and at the time of the ALJ's decision was considered a "younger person" under the Act. 20 C.F.R. § 416.963(c).
[5] Additionally, the ALJ cited testimony by the vocational expert that significant number of these jobs exist within Virginia (R. 18.)

3

independent psychological evaluation." (R & R at 8). As for Borth's physical impairments, the Magistrate Judge found that substantial evidence supported the ALJ's determination that despite Borth's limitations she could still perform "light work," and that the ALJ did not err by giving little weight to the contrary opinion of Dr. Jan Pijanowski. (R & R at 8.) For these reasons, the Magistrate Judge recommended that this court affirm the Commissioner's decision denying Borth's claim for SSI benefits, and grant the Commissioner's motion for summary judgment.

Borth generally objects that the R & R's "conclusion that substantial evidence exists to support the Commissioner's final decision is in error," and argues that "ALJ failed to properly consider all of the plaintiff's medically documented impairments[ and] failed to properly consider the medical evidence in the plaintiff's record." (Objects. to R & R, ¶¶ 1, 4, Dkt. No. 23.) More specifically, Borth contends that the "ALJ erred by failing to give greater weight to the opinions of plaintiff's treating physicians, [Drs. Pijanowski and Frazier]." (Id., ¶ 2). Borth also argues that the ALJ "erred in concluding that the plaintiff's allegations regarding her limitations were not fully credible." (Id., ¶ 4). For these reasons, Borth requests that this court reject the Magistrate Judge's recommendations and instead enter summary judgment for Borth, or in the alternative remand the case for a consultative psychological evaluation.

## II.

Borth brings this action pursuant to 42 U.S.C. § 405(g) of the Act, which authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). Judicial review of the Commissioner's final decision regarding disability benefits under the Act is limited to determining whether the ALJ's findings "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing 42 U.S.C. § 405(g)). Accordingly, a reviewing court

4

may not substitute its judgment for that of the ALJ, but instead must defer to the ALJ's determinations if they are supported by substantial evidence. Id. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but it is "more than a mere scintilla of evidence [and] may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). If the Commissioner's decision is supported by substantial evidence it must be affirmed. Hays, 907 F.2d at 1456; 42 U.S.C. § 405(g).

## III.

### A.

The court's review of the record reveals that substantial evidence supports the ALJ's determination that Borth is not disabled. Despite her physical and mental impairments, Borth can still perform "light work," which would allow her to return to her past relevant work as an assembler or machine operator, or in the alternative perform a significant number of other jobs in the national economy.

On March 14, 2006, Borth was examined by RoseAnn Holmgren, PA-C. At this time, Holmgren assigned Borth a Global Assessment of Functioning ("GAF") score of 55.[6] Borth was described as "alert and oriented," with a "fairly linear" mental thought process. (R. 285.) Her "insight and judgment seem[ed] to be fairly intact." (R. 285.) In addition, Borth "show[ed] no evidence of delusions or paranoia and denie[e] any suicidal or homicidal ideations." (R. 285.)

---

[6] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION-TEXT REVISION, 32 (American Psychiatric Association 2000) ("DSM-IV-TR"). A GAF of 51-60 indicates that the individual has moderate symptoms or moderate difficulties in functioning. Id.

5

On June 9, 2006, Dr. William Humphries reported on his examination of Borth for the Virginia Department of Rehabilitative Services. (R. 351-54.) He found Borth to be "an alert and pleasant white female in no distress who answers questions appropriately, relates well with the examiner and is cooperative for the exam," though "appear[ing] somewhat depressed with slightly flat affect." (R. 352.) Regarding her mental status, Dr. Humphries opined that Borth:

> is alert and oriented to three spheres. Speech is intelligible and sustained. No aphasia. Behavior is appropriate for this exam. Thought and idea content are within normal limits. Memory is intact for recent and remote events. Intelligence is within normal range. Affect and grooming are appropriate for this exam. She should be able to handle her own funds should they be awarded.

(R. 353.)

On June 15, 2006, Julie Jennings, Ph.D. completed her psychiatric review of the evidence pertaining to Borth's mental health and functioning. (R. 366-80.) Dr. Jennings found that Borth suffered from major depression, generalized anxiety disorder, past history of pain medication abuse, and recent usage of marijuana and cocaine. (R. 369, 371, 374.) Dr. Jennings rated Borth's limitation as moderate in the following three functional areas: (1) restriction of activities of daily living; (2) difficulties in maintaining social functioning; and (3) difficulties in maintaining concentration, persistence, or pace. (R. 376.) In addition, Dr. Jennings found that Borth had had no repeated episodes of decompensation. (R. 376.) On that same day, Dr. Jennings completed a mental residual functional capacity assessment, and concluded that Borth suffered no significant or moderate limitations in the following four areas: (1) understanding and memory; (2) sustained concentration and persistence; (3) social interaction; and (4) adaptation. (R. 381-82.) On November 13, 2006, Eugene Hamilton, Ph.D. arrived to conclusions identical to Dr. Jennings', after completing his review of Borth's mental health evidence. (R. 393-410.)

6

As for Borth's physical impairments, substantial evidence supports the ALJ's decision that she could perform light work. On June 9, 2006, Dr. Humphries concluded that Borth

> would be limited to sitting, standing and walking six hours in an eight-hour workday, lifting 25 pounds occasionally and 10 pounds frequently. There would be no restriction on climbing, kneeling or crawling. She would be limited to occasional stooping and crouching. She should avoid heights or hazards. There would be no fume restrictions.

(R. 354.) Physical residual functional capacity assessments were completed by Virginia State Agency physicians on June 15, 2006 and November 13, 2006; both found that Borth could perform light work within the parameters ultimately specified by the ALJ. (R. 357-65, 384-89.)

For these reasons, the court finds that substantial evidence supports the ALJ's determination that despite Borth's impairments, she was not disabled.

**B.**

The court disagrees with Borth's contention that the ALJ erred in affording the opinions of Drs. Frazier and Pijanowski little weight. It is true that, in general, the opinion of a treating physician should be afforded greater weight, and often controlling weight. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 416.927(d)(2) ("Generally, we give more weight to opinions from your treating sources. . . . If we find that a treating source's opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.") (emphasis added). However, when a treating physician's opinion is "inconsistent with other substantial evidence, it should be accorded significantly less weight."

7

Craig, 76 F.3d at 590.[7] For the reasons that follow, the court finds that substantial evidence supports that ALJ's decision to give little weight to the opinions of Drs. Frazier and Pijanowski.

Dr. Frazier was Borth's treating psychiatrist from the alleged onset date to at least May 7, 2007 (R. 304-337, 346-50, 441-65.) Dr. Frazier's treatment notes generally consist of a checklist, and suggest that Borth suffered from no substance abuse,[8] suicidal ideation, or homicidal ideation, and a statement of Borth's present GAF and GAF over the past year. Dr. Frazier consistently assessed Borth's present GAF at between 28[9] and 38,[10] but at the same time stated that Borth's GAF over the past year had been 68.[11] (R. 304-31, 444, 446, 448, 451, 454, 457, 459, 464.) On April 12, 2006, Dr. Frazier completed a medical evaluation and concluded that Borth was unable to work and that this condition had persisted for more than 90 days. (R. 442-43.) On January 8, 2007, Dr. Frazier completed a form specifically addressing Borth's mental capacity to perform work-related activities. (R. 411-15.) He generally rated her capacity as "poor," and opined that Borth's impairments or treatment would cause her to be absent from work more than three times per month, and that these impairments had existed and persisted since Borth's alleged onset date.[12] (R. 411-15.) On April 25, 2007, Dr. Frazier again evaluated Borth and concluded that she was unable to work, due to limitations in her ability to have interpersonal relationships with co-workers, and that this condition had persisted for more than 90 days. (R. 462-63.)

---

[7] Moreover, when faced with conflicting evidence contained in the record, it is the duty of the ALJ to fact-find and to resolve any inconsistencies. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

[8] In fact, Borth has an extensive history of poly-substance abuse. (R. 15, 45-54.)

[9] A GAF of 21-30 indicates that behavior is considerably influenced by delusions or hallucinations; serious impairment in communications or judgment; or an inability to function in almost all areas. DSM-IV-TR at 32.

[10] A GAF of 31-40 indicates some impairment in reality testing or communication; or major impairment in several areas—such as work or school, family relations, judgment, thinking, or mood. DSM-IV-TR at 32.

[11] A GAF of 61-70 indicates some mild symptoms; or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, with some meaningful interpersonal relationships. DSM-IV-TR at 32.

[12] The vocational expert testified that missing two days per month of work for light, unskilled jobs would preclude employment. (R. 66.)

8

Dr. Frazier's restrictive opinion of Borth's capacity to perform work is inconsistent both with substantial evidence in the record (see supra, Part III(A)) and his own treatment notes. Throughout the relevant time period (almost four years), Dr. Frazier assessed Borth's present GAF in the 20s or 30s, yet at the same time states that her GAF had been as high as 68 during the preceding year.[13] However, Dr. Frazier never actually finds Borth to have a GAF even approaching 68. On their face then, Dr. Frazier's conclusory assessments contradict one another. Additionally, there is no legible explanation in Dr. Frazier's treatment notes or other evaluations for such dramatic swings in functioning.[14]

On June 14, 2007, Dr. Pijanowski completed a statement of Borth's ability to perform physical work-related activities. (R. 479-82.) There, Dr. Pijanowski opined that Borth could lift and/or carry less than ten pounds occasionally and frequently, stand and/or walk two hours in an eight-hour workday, sit two hours in an eight-hour workday, and is limited in her ability to push and pull with both the upper and lower extremities. (R. 479-80.) Dr. Pijanowski also opined that Borth's impairment or treatment would cause her to miss about two days or work per month. (R. 482.) The limitations that Dr. Pijanowski suggests would preclude Borth from finding employment (R. 65-66), however, for the reasons expressed supra, Part III(A), the court finds that Dr. Pijanowski's opinions are inconsistent with other substantial evidence in the record

For these reasons, the court finds that substantial evidence supports the ALJ's decision to give little weight to the opinions of Drs. Frazier and Pijanowski.

---

[13] A GAF in the 20s or 30s would also be inconsistent with Borth's admitted activities: living with her adolescent son and caring for him, caring for herself, shopping for groceries and clothes, and driving a car. (R. 56-57, 200-01.)

[14] Due to the illegibility of Dr. Frazier's treatment notes, if the court declined to grant her summary judgment Borth requests that in the alternative the court order a consultative psychological examination. The court declines this request, finding that substantial evidence supports the ALJ's finding that Borth is not disabled. (See supra Part III(A).)

9

## C.

Borth further argues that the ALJ erred in concluding not fully credible claims that she was unable to sit or stand more than 15-30 minutes without changing position, and that she must lie down for approximately 30 minutes twice a day due to alleviate her discomfort. (R. 16).

Credibility determinations about allegations of pain are in the province of the ALJ, and courts should not normally interfere with such determinations. See Hatcher v. Sec'y, Dep't of Health and Human Servs., 898 F.2d 21, 23 (4th Cir. 1989); Melvin v. Astrue, No. 606cv32, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007); SSR 95-5p. The ALJ is not required to accept a claimant's testimony that he is disabled by pain, as these statements "alone . . . are not enough to establish that there is a physical or mental impairment." 20 C.F.R. § 416.928(a). "[S]ubjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591 (citing Mickles v. Shalala, 29 F.3d 918, 922 (4th Cir. 1994) (Luttig, J., concurring in the judgment)). See also 20 C.F.R. § 416.929(b).

The court finds no reason to disturb the ALJ's credibility assessment, as it was well-supported by the record. Specifically, the ALJ based his assessment on: (1) records from Dr. G. Sam Samarasignhe which "document functional range of motion of the lumbosacral spine with no neurological deficits in the lower extremities;" (2) Dr. Humphries' consultative examination which showed "normal gait and the absence of neurological deficits with only slight restriction in range of motion of the lumbar spine;" and (3) Borth's own self-reported activities. (R. 16. See also R. 289-92, 352-54, 56-57, 200-01.)

10

## V.

For the reasons stated above, the court will **OVERRULE** Borth's objections, and **ADOPT** the Magistrate Judge's R & R. The Commissioner's motion for summary judgment will be **GRANTED** and Borth's motion for summary judgment **DENIED**. An appropriate order shall issue this day.

The Clerk is directed to send copies of this memorandum opinion and the accompanying final order to counsel of record for both parties.

**ENTER:** This 7th day of May, 2009

/s/ James C. Turk
Senior United States District Judge

11